IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, individually, and as Guardian and Parent of F.H., a Minor, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 20 CV 3857 |
| THE BOARD OF EDUCATION OF THE CITY OF CHICAGO d/b/a CHICAGO PUBLIC SCHOOLS, ANGEL LEBRON, LAURA BUBEL, and TERESA DIROSA, | ) ) ) ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

**ORDER**

For the reasons set forth in the Statement below, the defendants' partial motion to dismiss [46] is denied.

**STATEMENT**

**I.      Background**[1]

This action concerns the alleged abuse of F.H., a non-verbal minor with Down syndrome, by a teacher and two classroom assistants employed by the Board of Education of the City of Chicago: Laura Bubel, Angel Lebron, and Teresa Dirosa. Plaintiff Jane Doe's nine-count amended complaint asserted various federal and state law claims on behalf of herself and F.H., her son. The defendants moved to dismiss five counts and answered the others. Subsequently, the parties agreed to dismiss four of the five non-answered counts. Pl.'s Mot. to Vol. Dismiss ¶ 3, ECF No. 74. What remains subject to the defendants' motion to dismiss, then, is Ms. Doe's claim of willful and wanton conduct (an aggravated form of negligence under Illinois law).[2]

---

[1] The factual allegations are taken from the amended complaint. *See* Am. Compl. ¶¶ 4–22, 29–41, 76–98, ECF No. 29. They are accepted as true for the purposes of the defendants' motion to dismiss. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

[2] The claims which remain subject to the defendants' answer are false imprisonment, intentional infliction of emotional distress, and relief under both the Illinois Family Expense Act (750 Ill. Comp. Stat. 65/15) and the Civil Rights Act of 1871 (42 U.S.C. § 1983). Because this Court has original jurisdiction over the latter, supplemental jurisdiction exists over Ms. Doe's state law claims. 28 U.S.C. § 1367(a).

The relevant events took place at Edwin G. Foreman College and Career Academy, a Chicago area public high school operated by the Board of Education. F.H. enrolled there as a freshman in the fall of 2019. He was, prior to matriculation, a "happy young man." Am. Compl. ¶ 19, ECF No. 29 (according to F.H.'s junior high school teachers). But not long into his freshman year, F.H.'s behavior and emotional wellbeing took a precipitous turn. He refused to eat, overslept, and often cried and soiled himself on the way to school. He was prone to panic and generally exhibited a fear of attending Foreman.

F.H. was crying when Ms. Doe arrived at Foreman with him on December 2, 2019. On that day, she escorted him to class, but F.H. refused to enter. He was visibly distraught; Ms. Doe relented. She decided to take her son home.

On her way out of the school, Ms. Doe ran into the three individual defendants: Ms. Bubel (F.H.'s special education teacher) and Mr. Lebron and Ms. Dirosa (special education classroom assistants). Ms. Doe informed them she was taking F.H. home, and this is what Ms. Doe says happened next: The defendants "ripped F.H. away from his mother's grasp" and physically prevented him from returning to her. *Id.* ¶ 31. One held his mid-section while the other two each restrained an arm. Ms. Doe begged them to "give back [her] baby." *Id*. She and F.H. were crying. The defendants told Ms. Doe to leave—her presence, they said, was "mak[ing] things more difficult." *Id.* ¶ 33. She objected. They then dragged F.H. down a hallway and isolated him inside a vacant classroom where he spent the next five hours screaming and crying.

Ms. Doe now claims all three defendants, as well as the Board of Education, are liable for the willful and wanton use of a physical restraint. The defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claim, arguing Ms. Doe's factual allegations are deficient and cannot justify relief. To avoid dismissal, however, her allegations—including all reasonable inferences drawn from them—need only state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The allegations above clear that threshold easily.

**II.     Discussion**

Willful and wanton conduct is not an independent tort in Illinois, it is simply an aggravated form of negligence. *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 274, 641 N.E.2d 402, 406 (1994); *see id.* at 275, 641 N.E.2d at 406 ("Willful and wanton conduct is generally considered in that area of fault between ordinary negligence and actual malice.") (internal quotations omitted). "In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim . . . . In addition, a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012); *see also* 745 Ill. Comp. Stat. 10/1-210 (defining *willful and wanton conduct* as "a course of action which shows actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property"); Ill. Pattern Jury Instructions - Civ. 14.01 (same).[3]

---

[3] The statutory definition of *willful and wanton conduct* cited here and used by the Local Governmental and Governmental Employees Tort Immunity Act applies only to that Act. 745 Ill.

Here, the defendants concede that Ms. Doe has adequately alleged the basic elements of negligence. Mot. to Dismiss 10, ECF No. 46. They also do not contest that the Board of Education would be vicariously liable for the alleged willful and wanton conduct of the individual defendants. *See id.*; *see generally Pyne v. Witmer*, 129 Ill. 2d 351, 359, 543 N.E.2d 1304, 1308 (1989) ("For an employer to be vicariously liable for an employee's torts under the doctrine of *respondeat superior*, the torts must have been committed within the scope of the employment."). The only issue the defendants argue is whether Ms. Doe has adequately alleged that the individual defendants "acted with a deliberate intention to harm or a conscious disregard for F.H.'s welfare." Mot. to Dismiss 10, ECF No. 46.

Ms. Doe's involvement in the alleged incident is significant. The defendants did not apprehend F.H. after finding him wondering the school hallways alone. His mother was escorting him. He was visibly distraught and in her arms when they came upon him. And against Ms. Doe's expressed desire to return F.H. home, the defendants took him—precisely, they "ripped F.H. away from his mother's grasp." Am. Compl. ¶ 19, ECF No. 29. Against her repeated protests to return the boy, and despite F.H.'s own attempts to flee to his mother, they restrained him—physically and forcefully. They did all this with F.H. crying and while Ms. Doe, too, cried beside them.

Given these allegations, it is reasonable to infer that the individual defendants were, in that moment, conscious of the mentally disabled boy's distress and of the risk of exacerbating it by intervening in and forcefully denying him the active comfort of his mother. They disregarded this risk and repeatedly disregarded the expressed intentions of Ms. Doe—who, as F.H.'s mother, is an authority on her son's welfare. *See* 105 Ill. Comp. Stat. 5/24-24 (authorizing school officials to discipline students but only "in the absence of their parents or guardians"). In short, given these allegations, it is plausible the defendants held "an utter indifference to or conscious disregard for the safety" of F.H. by physically restraining him. *See* 745 Ill. Comp. Stat. 10/1-210; *cf. Crecy v. Kankakee Sch. Dist. #111*, No. 15-CV-1014, 2016 WL 10789394, at *16 (C.D. Ill.

---

Comp. Stat. 10/1-210. Nevertheless, the Illinois Supreme Court has stated that this statutory definition is "entirely consistent" with the common-law definition. *Harris v. Thompson*, 976 N.E.2d 999, 1011 (Ill. 2012). *Compare* 745 Ill. Comp. Stat. 10/1-210, *with Schneiderman v. Interstate Transit Lines*, 394 Ill. 569, 583, 69 N.E.2d 293, 300 (1946) ("A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."). This Court relies on it, as well as case law that applies it, out of convenience. In so doing, however, no finding is made as to the applicability of the Tort Immunity Act to this case. The defendants properly assert the Act as an affirmative defense. Answer 21–22, ECF No. 45; *see also Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 370, 799 N.E.2d 273, 280 (2003) (noting that "the immunities afforded to governmental entities" under the Tort Immunity Act "operate as an affirmative defense"). They do not, however, raise it in their motion to dismiss as a bar to Ms. Doe's willful and wanton conduct claim. *See* Mot. to Dismiss 10, ECF No. 46; *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("The mere presence of a potential affirmative defense does not render the claim for relief invalid.").

3

June 20, 2016) (a reasonable jury could find school official, after being informed of student's tracheotomy, willfully and wantonly restrained the student by grabbing the student's neck).

The defendants' potential recklessness is brought further into relief by their apparent familiarity with F.H.'s fragile disposition. Ms. Bubel was F.H.'s assigned special education teacher. As for Mr. Lebron or Ms. Dirosa, Ms. Doe does not allege either were specifically assigned to F.H., but as special education classroom assistants, it is reasonable to infer they knew him. And in the months preceding the incident, Ms. Doe met twice at the school—first with Foreman's assistant principal and second with Ms. Bubel—to discuss the panic attacks F.H. had been having since the start of his freshman year. In other words, this is not a case where the defendants acted unwittingly upon an unknown student only to discover in that moment he was emotionally delicate.

The school policies in place during the incident also impute to the defendants an awareness that their conduct bore consequences. *See In re Est. of Stewart*, 60 N.E.3d 896, 912–14 (Ill. App. Ct. 2016) (partially attributing jury's finding of willful and wanton conduct to evidence of teacher's violation of clear school policy during her response to an asthma student's collapse). According to Ms. Doe, the Board of Education's policies prohibited the use of physical restraints on students with disabilities unless expressly authorized by the student's individualized education plan. Am. Compl. ¶ 37, ECF No. 29. F.H.'s plan did not include such authorization. *Id.* ¶ 38.

\*   \*   \*

"[I]n general, whether conduct is 'willful and wanton' is ultimately a question of fact for the jury." *Murray v. Chi. Youth Ctr.*, 224 Ill. 2d 213, 245, 864 N.E.2d 176, 194 (2007) (internal quotations omitted). Courts are only called to determine "whether a plaintiff has alleged sufficient facts such that a jury question concerning the willful and wanton nature of defendant's conduct is created." *Doe v. Calumet City*, 161 Ill. 2d 374, 390, 641 N.E.2d 498, 506 (1994). Ms. Doe has done so here. The circumstances her allegations paint plausibly suggest the defendants were utterly indifferent to or consciously dismissive of the risks to F.H.'s welfare created by their deliberate, physical restraint of him. The defendants' motion to dismiss is therefore denied.

Date: July 5, 2022

John J. Tharp, Jr.
United States District Judge

4